Judge Logan
delivered the opinion of the court.
This was a suit in chancery to compel the specific exe* cution of a contract in the sale of a certain tract of land.
On the 3d of September, 1813, Hart covenanted to convey to Brand this tract of land at $25 per acre, payable at different periods: the first payment to be made on the 25th December then ensuing, or as soon as possession could be obtained; and the balance in two equal annual payments, from the time of receiving possession, with interest to be annually paid. Or, if the purchaser .preferred, he might have two and three years to make the payments for the farther sum of $600.. The land to be conveyed upon the receipt of the first payment, and the purchaser to give a deed of trust, to secure the residue of the consideration.
The circuit court decreed the execution of the contract;
And' Hart prosecutes his writ of error — assigning as error the following:
1. That a court of equity ought not, under the circumstances of the case, to interpose; but should leave the party to his remedy at law.
2. That a conveyance ought not to have been decreed, without allowing to Hart interest On the purchase money from the time of his having made a tender of a deed to Brand.
"Whether a contract specifically df-c eed de-pemts on the cesCU^ftathe case.
If a vendee shews a wil-hng-ness^and foifil'his con° tract without chicanery,he is ente led to the aid oí equity.
8. That the decree is erroneous in giving cost, the suit having been brought without a tender of the consideration or a demand of the possession of the land.
4. It was error to postpone the execution of the contract until the 31st of January, 1817, and defer until then the payment of interest.
5. It was error to leave the complainant at liberty either to comply with the decree or not; and providing, after all power over the cause had terminated, for the dismissal of the bill in the event of his failing to comply.
I. Whether equity ought to give the relief sought, sure-depends on the circumstances of the case. The amount of the payment oh the 25th of December, could be ascer-tamed only from the number of acres in the tract. On the Hart proceeded with a surveyor to ascertain the quan-But the surveyor not being, able to plot and give the precise quantity on that day, Hart informed Brand that about 10 o’clock on the next day, he might see him at Fost-lethwait’s tavern, in Lexington. Brand accordingly attended, and remained there some time; but Hart was detained, and did not arrive until 12 or 1 o’clock: And it so happened that each was inquiring for the other, but did not meet together till about four o’clock. The writings were then to draw and the money to be paid. By the time the deeds were written, it was late. Hart then informed Brand that he was ready to perform the contract on his part — tendered his deed, and demanded the money. Brand offered him a check on the bank, where he had more than the amount deposited. But Hart refused to receive the check or take bank notes. Brand, in the mean time, had prevailed on a friend to wait on the cashier of the bank, and request bis attendance for the purpose of procuring the specie. The bank was then not open for ordinary business: But the messenger having returned and informed them that the cashier would be there immediately, Hart refused to wait, and having tendered his deed, mounted his horse and town.
It appears that Brand could, on that evening, have pro-ciire(j from the cashier the specie. His credit was good, anc* his character for punctuality unquestionable. There was no wilful evasion or premeditated lying back by him. QV1 the contrary, he was really desirous that the contract s]10ll]c| p,e carr¡ed into effect. He could have bad no motive , to equivocate or avoid it: tor the land had increased con- *161 Sulerably in value; and to obtain possession was certainly an object — and the money, as to him, was lying unemployed.
if the pay-fifi purchase is prevented, by the act of the uot^entitled to interest,
But the agreement did not depend on the payment of the money as a. condition precedent, whereby the mere casual failure to make payment, on the precise day, should render it invalid. It is sufficient to justify the aid of a court of chancery, that the purchaser has, with good faith, shewn a willingness and readiness, without injurv to the vendor, to perform substantially the agreement. And when the vendor has himself been instrumental in producing the delay, or has given countenance thereto by lying back, the effect thereof ought not to be solely applied to the purchaser, and thus deprive him of the benefit of the contract, to meet which he nlayhave sustained other sacrifices.
But, independent of these circumstances, the first act to be performed was, by the vendor, in the delivery of the possession of the land, which still remained in the occupancy of his tenant. And, although, the purchaser might have waived its delivery, and relied on the alienation to himself and the acquiescence of the tenant, he was, nevertheless, not strictly bound to do so. The tenant might have withheld from him possession, until coercecKo surrender it. This the purchaser was not bound to risk. This court, therefore, concurs with the circuit court in opinion upon the merits.
The 2d and 3d errors assigned, may be considered together. They embrace these questions — 1. whether the vendor was entitled to interest — 2. whether the vendee was entitled to the cost of the suit.
With respect to interest. No proposition can be more clear, that if the purchaser were really and bona fide prepared to make payment, and intended to do so, free from all shuffling, equivocation, and technical quibble; and the vendor has ever since evinced a determination not to perform the contract, if possible — having never given notice to the vendee when to attend on the premises and receive possession — that he is not entitled to Interest. In other words, that one holding himself in readiness to pay, and the other refusing to do what the contract injoined upon ..him, ought to subject the latter to the loss of interest and not the former. The wrong was with him, and he cannot charge the effect to the other. *»
Avendee Jri-tetochen" tract, shall ccJts hlS
in decreeing' speciScally.a be given the pa; tics and e-Titiom8 C-e" sr.i-ihed.
And as to cost, it is equally clear that the decree is có^ rect. Why the incurment of cost? Because the benefit of the contract could not be otherwise obtained. This is de-nionstrabie, not only from the other evidence in the cause, hut from the answer also. To have tendered the money demanded possession under the circumstances, would have been an idle shew of form and ceremony, ff the de-Cendant intended to comply, by receiving the money and delivering the land, why did he not rest his defence as to the cost upon this ground, without resorting to points evidently for a different purpose? The real object was clearly to get clear of the bargain; and the next to secure interest and cost. It is impossible not to perceive, from the whole evidence, that this was the object; and, if possible, to make the experiment at the expense of the purchaser, upon misapplied rules of rigid technical pleading,
The 4th and 5th errors assigned, may also be taken ton,e|p„r They relate to the usual powers of the chancellor m decrees of this kmj — m giving time to perform; and prescribing the conditions upon which the performance shall 'oe enforced. The time give» must rest according to circumstances, within the discretion of the court. But in the present instance, as to the length of time, it surely illy becomes the defendant-to complain; because he might, before that day, have executed the contract. The extent -of the time was clearly for his own convenience, as it afforded the opportunity of securing the growing crop and terminating a probable lease. And had the defendant offered to perfcrm'the decree on an earlier day, ashy the decree he might have done, and the complainant had refused to make the first payment, and to do what was equitable agreeably to bis contract; such a refusal would have been equally within the power of the court, as when refused on the most distant day given by the decree. Fn one case, a dismissal of his bill would have been the consequence: In the other, rf not a'dismissal, at least interest on tlie money. The decree prescribed only the time and manner of executing the contract. This was not necessary to be performed in court: indeed, in port, it was impossible that it could fce there performed. The court, however, retained from its nature a eontrouiing power over its execution. Had a controversy arisen about the payment of the money, or a tendcrand refusal on the most distant day given by the decree; certainly, this might have furnished proper ground to excuse the non *163 performance thereof, or to have coerced it, according to the event as exhibited to the court. Every act, in fine, done out of court towards the execution of the decree, was subject to the revision of the court, who alone was competent to judge of and controul its abuse.
JVickliffe for plaintiff, Haggin for defendant in error.
Upon the whole, therefore, we are of opinion that the decree is correct. • And that all the consequences of complaint and injury, are more properly attributable to the vendor himself. In his subsequent proposal, pending the suit, to perform the contract, if the complainant would pay the the first and second payments, was a condition not within the agreement; the second payment being due only within a year after the complainant should get possession of the land.
The decree must he affirmed with cost.